**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Regina M. Rodriguez**

Civil Action No. 23-cv-03308-RMR-KAS

DANIEL ESTEBAN CAMAS LOPEZ, individually and on behalf of all similarly situated
persons,

      Plaintiff,

v.

MARRIOTT INTERNATIONAL, INC.,

      Defendant.

---

**ORDER ADOPTING MAGISTRATE JUDGE RECOMMENDATION [ECF No. 58]**

---

This matter is before the Court on the Recommendation of United States
Magistrate Judge Kathryn Starnella, ECF No. 58, addressing Defendant's Motion to
Dismiss Plaintiff's First Amended Class Action Complaint ("FAC"). ECF No. 36.
Magistrate Judge Starnella recommends the Motion be granted in part and denied in part.

Both parties have filed an Objection to the Recommendation. ECF Nos. 59, 60.
Both parties filed a Response to the Objections. ECF Nos. 63, 64. This Court has
reviewed and considered de novo the Recommendation, the Objections, the Responses,
and the record relied upon by Magistrate Judge Starnella. Defendant requests oral
argument in its Objection. The Court has concluded that oral argument would not be
beneficial, and therefore, the matter is ripe for review and ruling. For the reasons stated
below, the Court **OVERRULES** the Objection filed by Defendant, ECF No. 59,

**OVERRULES** the Objection filed by Plaintiff, ECF No. 60; and **ACCEPTS and ADOPTS**
the Recommendation.

## I.    BACKGROUND

This case arises from an allegation that Defendant Marriott International, Inc.
("Marriott" or "Defendant") works with non-party Alliance Abroad Group, LP ("Alliance") to
recruit J-1 visa interns to provide labor that was substantially different from what had been
represented to them and the State Department in violation of both Colorado and federal
anti-trafficking laws (Claims Four and Five). ECF No. 11 ¶¶ 31-32, 172-187. Plaintiff
worked for Marriott at St. Regis Aspen Resort ("St. Regis"), an upscale hotel in Aspen,
CO, as a J-1 intern from May 2021 to July 2021. *Id.* at ¶¶ 57-131. Plaintiff brings this
lawsuit on behalf of himself, and other J-1 visa interns employed by Marriott at St. Regis.
*Id.* at ¶ 1. In addition to the anti-trafficking laws, Plaintiff alleges Defendant violated the
Colorado Consumer Protection Act ("CCPA") (Claims One and Two), the Colorado
Organized Crime Control Act ("COCCA") (Claim Three), and the Racketeer Influenced
and Corrupt Organizations ("RICO") Act (Claim Six). *Id.* at ¶¶ 145-171, 188-194. The
parties do not object to the factual or procedural background outlined in the
Recommendation. ECF No. 58 at 2-6. Accordingly, the Court adopts and incorporates the
factual and procedural background included within the Recommendation as if set forth
herein.

Magistrate Judge Starnella recommends that Claims One (CCPA – Fraudulent
Internships), Two (CCPA – Human Trafficking), and Three (COCCA) be dismissed and
that Claims Four (Colorado's Human Trafficking Statute), Five (Trafficking Victims

Protections Act ("TVPA")), and Six (RICO) be allowed to proceed. Defendant objects, arguing that all the claims should be dismissed. ECF No. 59. Plaintiff objects arguing all the claims should be allowed to proceed. ECF No. 60.

## II.    LEGAL STANDARD

The Court is required to make a de novo determination of those portions of a magistrate judge's recommendation to which a specific, timely objection has been made, and it may accept, reject, or modify any or all of the magistrate judge's findings or recommendations. 28 U.S.C. § 636(b)(1)(C) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."); Fed. R. Civ. P. 72(b)(3) ("The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to.").

"[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property*, 73 F.3d 1057, 1060 (10th Cir. 1996).

The Magistrate Judge correctly sets forth the standard to be used in evaluating a Plaintiff's Motion to Dismiss. That is, to survive a Rule 12(b)(6) motion, "[t]he complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support plaintiff's allegations." *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[P]lausibility refers to the scope of the allegations in a complaint: if they are so general

that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (internal quotations and citations omitted).

### III.     Defendant's Objections

Defendant objects to the recommendation that the Court allow Plaintiff's trafficking claims to proceed because Defendant argues they fail as a matter of law. Defendant argues that: 1) Marriott did not force Plaintiff to work at the hotel; 2) Marriott did not recruit Plaintiff; and 3) Plaintiff's venture liability theory fails. Defendant also argues that Plaintiff's RICO claim fails as a matter of law because the Recommendation incorrectly finds that Plaintiff sufficiently alleged an enterprise between Marriott and Alliance and that the enterprise engaged in unlawful predicate acts.

### A.     Trafficking (Claims Four and Five)[1]

The Magistrate Judge correctly set forth the law regarding the TVPA. The TVPA creates a civil cause of action for victims of human trafficking as defined in 18 U.S.C. § 1589. *See Bistline v. Parker*, 918 F.3d 849, 870 (10th Cir. 2019). The TVPA prohibits anyone from knowingly providing or obtaining labor or services from a person by one or more of the following means:

> (1) by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person;

---

[1] Defendant does not raise any objections specific to Colorado's Anti-Human Trafficking Statute; rather, it relies on its TVPA arguments while citing Colo. R. Stat. § 18-3-502(2), (2)(c). ECF No. 59 at 8-9. Colo. R. Stat. § 18-3-502(2)(c) defines coercing as "inducing a person to act or to refrain from acting, if the inducement is accomplished by any one or more of the following means: [u]sing or threatening to use the law or the legal process, whether administrative, civil, or criminal, in any manner or for any purpose for which the law was not designed."

> (2) by means of serious harm or threats of serious harm to that person or another person;
>
> (3) by means of the abuse or threatened abuse of law or legal process; or
>
> (4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint[.]

18 U.S.C. § 1589(a). Abuse of law or legal process means:

> [T]he use or threatened use of a law or legal process, whether administrative, civil, or criminal, in any manner or for any purpose for which the law was not designed, in order to exert pressure on another person to cause that person to take some action or refrain from taking some action.

18 U.S.C. § 1589(c)(1). Serious harm is defined broadly in the statute:

> [A]ny harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm.

18 U.S.C. § 1589(c)(2). As relevant here, the TVPA also prohibits anyone from "knowingly benefit[ting]," whether "financially or by receiving anything of value, from participation in a venture which has engaged in the providing or obtaining of labor or services" through any of the above-listed prohibited acts, "knowing[ly] or in reckless disregard of the fact that the venture has engaged in the providing or obtaining of labor or services by any such [unlawful] means[.]" 18 U.S.C. § 1589(b).

### 1. Forced Labor

Magistrate Judge Starnella found that Plaintiff's "allegations sufficiently allege Defendant's participation in a 'scheme, plan, or pattern' intended to unlawfully procure

ordinary labor from J-1 interns under false pretenses." ECF No. 58 at 11. She also found

that "Plaintiff has alleged that he faced specific threats of serious harm proscribed by 18

U.S.C. § 1589(a)(2)." *Id.* at 13.    The Recommendation's analysis focuses on

18 U.S.C. §§ 1589(a)(2) and (4). Defendant points out that "Plaintiff argued **exclusively**

that his forced labor claims were 'based on "abuse or threatened abuse of law or legal

process [under 18 U.S.C. § 1589(a)(3)],"' not a scheme or serious harm." ECF No. 59 at

8 (emphasis in the original). The Court does not disagree that, in its Response to

Defendant's Motion, Plaintiff focused on Defendant's abuse of the J-1 visa program. ECF

No. 39 at 2. However, in his FAC, Plaintiff alleged all three:

> Defendant knowingly attempted to and did obtain the labor or services of
> Plaintiff and those similarly situated by means of serious harm or threats of
> serious harm; the abuse or threatened abuse of law or legal process
> (including the misuse of the J-1 visa program); a scheme, plan, or pattern
> intended to cause Plaintiff and those similarly situated to believe that, if they
> did not perform such labor and services, that they or another person would
> suffer serious harm; or a combination of one or more of these means.

ECF No. 33 ¶ 179. Even if Plaintiff focused on 18 U.S.C. § 1589(a)(3) versus

§§ 1589(a)(2) and (4), the Court agrees with Magistrate Judge Starnella's analysis.

Plaintiff has sufficiently alleged that Defendant and Alliance, the agency that recruited

Plaintiff, threatened the abuse of the legal process and serious harm to provide forced

labor because, as discussed in more detail below, Alliance threatened deportation and

Marriott threatened reputational harm. Threats of deportation are sufficient to meet the

"serious harm" element under either § 1589(a)(2) or (4) or "abuse of the legal process"

element under § 1589(a)(3)." *Bucco v. W. Iowa Tech Cmty. Coll.*, No. C21-4001-LTS,

2022 WL 605801, at *6 (N.D. Iowa Mar. 1, 2022) (finding plaintiffs sufficiently alleged

abuse of legal process under 18 U.S.C. §§ 1589(a)(3) and (4) by alleging defendants threaten deportation).

Defendant argues either way, "Plaintiff's claims still fail because he cannot allege coercion." ECF No. 59 at 9. The Court disagrees. When Plaintiff raised concerns about his internship with Alliance, the agency that recruited him for the position, he was told:

> [T]hat [Plaintiff] would likely lose his housing deposit, the transfer process is complicated and not a guarantee, there may be a transfer fee of approximately $400-$600, he may be unemployed for up to 4-6 weeks, his new host company may not be approved, Alliance would not help him find a new host company, and if he did not find a new host company within a strict timeline, he would be required to return to his home country immediately.

ECF No. 33 at ¶ 127. The Magistrate Judge found that the "Alliance agent's statements to Plaintiff plausibly amounted to threats of deportation that coerced Plaintiff into continued involuntary labor." ECF No. 58 at 14. This Court agrees.

Defendant argues that the Magistrate Judge did not consider Plaintiff's specific vulnerabilities, but rather focused on the generic vulnerabilities of J-1 interns. Plaintiff alleged the following facts specific to him:

- "In order to participate in the program, Plaintiff paid Alliance a total program fee of $3,900.00, consisting of an inscription fee of $100.00, a down-payment of $900.00, and a deferred program fee of $2,900.00 split into 10 monthly payments of $290.00." ECF No. 33 at ¶ 45.

- "Defendant deducted $800/month from Plaintiff's paychecks in exchange for his housing, which was a bed in a shared room in a dilapidated house shared with other J-1 interns that worked for St. Regis." *Id.* at ¶ 95.

- "The house was far away, and Plaintiff could only get to work by bus. St. Regis provided Plaintiff a bus pass but deducted the cost from his paycheck." *Id.* at ¶ 95.

- Plaintiff was promised a 32- to 40-hour workweek with optional overtime. Plaintiff alleges his overtime hours were mandatory. He alleges he worked 6 days a week, 8 to 12 hours a day, so 48 to 72 hours a week. *Id.* at ¶¶ 106-07, 113, 117.

- He was required to do work as a general kitchen laborer contrary to what was promised by Defendant and Alliance. *See id.* at ¶¶ 98-124.

- "When Plaintiff provided his notice of his intent to transfer to Defendant's agent Darren Zemnick, Mr. Zemnick told him that Aspen is a small town and that everyone would know if the executive chef had negative things to say about Plaintiff." *Id.* at ¶ 128.

- "Plaintiff felt threatened by these statements and believed Defendant's agent Mr. Zemnick made the statement in an effort to pressure him to continue working at the St. Regis Aspen." *Id.* at ¶ 129.

The alleged facts show that Plaintiff was vulnerable. He was financially invested in this job. He depended on this job for housing, transportation, and income. He faced being removed from the United States if he could not find another host organization. Alliance was not willing to help him find another host organization. These circumstances would "compel or coerce a reasonable person in the same situation to provide or to continue providing labor or services." *Mojsilovic v. Oklahoma ex rel. Bd. of Regents for the Univ. of Oklahoma*, No. CIV-14-886-R, 2015 WL 1542273, at *4 (W.D. Okla. Apr. 7, 2015).

Defendant argues that "the cases the Recommendation relies on are plainly distinguishable" ECF No. 59 at 11. Defendant would rather have the Court rely on *Estavilla v. Goodman Group*, No. CV 21-68-M-KLD, 2022 WL 539192 (D. Mont. Feb. 23, 2022). The Court finds that *Estavilla* is distinguishable. In *Estavilla*, the defendant agreed to "advance" $26,642.47 to the plaintiff, a nurse from the Philippines, to come work for defendant in Montana. *Id.* at *1-2. The advance would be forgiven if she remained employed with the defendant for three years. *Id.* at *1. She also agreed that she would

not work for any health care or assisted living facility in Montana for twelve months after termination of employment. *Id.* The offer letter the plaintiff signed also warned that if she did not meet any of her obligations she would be reported to immigration under any applicable immigration fraud statutes. *Id.* The defendant terminated plaintiff's employment for cause after 18 months. *Id.* at *2. The focus of the analysis in *Estavilla* was "financial pressure, including financial harm." *Id.* at *4. The plaintiff in *Estavilla* did not allege threats of deportation, intolerable working or living conditions, or threats of retaliation for the employee voicing criticisms. *Id.* at * 12. *Estavilla* did not involve the J-1 visa program. The plaintiff in *Estavilla* did not allege that she was coerced to keep working for Defendant. Here, Plaintiff's allegations go beyond financial harm. He has also made allegations regarding the working and living conditions. He has also alleged reputational harm.

Defendant argues that in *Estavilla*, "as for the language about visa requirements and reporting non-employment to immigration authorities, the court rejected the claim because the plaintiff never alleged that her employer 'threatened to report her…or that she felt compelled to continue working…because of th[e] clause.'" ECF No. 59 at 10. (citing *Estavilla*, 2022 WL 539192 at * 15). The plaintiff in *Estavilla* did not have the option to keep working because she was terminated. Here, Plaintiff has alleged that he felt pressure to keep working for Marriott. Alliance told Plaintiff that it would not assist in finding Plaintiff another host organization, and that if he could not find another host organization, he would be "required to return to his home country immediately." ECF No. 11 at ¶ 127. *See Mojsilovic*, 2015 WL 1542273, at *4 ("[A]lthough an employer may

legitimately advise an employee that termination may result in a change in visa status, utilizing that fact to force labor is not permitted by the law.")

The Court finds that the cases cited in the Recommendation are more analogous to the situation here. In *Francis v. APEX USA, Inc*., the court denied the defendants' motion to dismiss because the court found "sufficient allegations of financial harm and a scheme, pattern or plan to withstand dismissal." 406 F. Supp. 3d 1206, 2012 (W.D. Okla. 2019). *Francis* also involved plaintiffs recruited to work in the United States pursuant to the J-1 visa program. *Id.* at 1209. Defendant argues "that case [*Francis*] is nothing like this one." ECF No. 59 at 11. Defendant lists allegations made by the plaintiffs in *Francis* and argue, "Plaintiff alleges nothing of the sort and the opposite occurred." Defendant failed to include allegations that are similar between the two cases on which the court found alleged financial harm, such as the defendant "did not provide the employment opportunities represented," the plaintiffs "felt compelled to continue to make payments out of fear of losing sums previously paid," the defendants "misrepresented the number of hours per week [p]laintiffs could work," plaintiffs were subjected to "excessive living expenses," and the defendants "engaged in conduct which precluded them from obtaining other employment." Francis, 406 F. Supp. 3d at 2011-12

*Bucco*, another case cited in the Recommendation, also involves participants in the J-1 visa program. 2022 WL 605801 at *1. There, the court found that the plaintiff's sufficiently alleged "abuse or threatened abuse of legal process under subsection 1589(a)(3) or a scheme intended to cause plaintiffs to believe they would face serious harm under subsection 1589(a)(4) by alleging that defendants threatened them with

deportation if they missed work." *Id.* at *6. The plaintiffs were promised internships that would be related to their field of study and at which they would work no more than 32 hours per week. *Id.* at *1. Instead, they were "regularly expected to work up to 56 hours per week" and were "coerced into performing hard, manual labor that was outside their field of study and contrary to what they were promised." *Id.* at *1, 6. Similarly, Plaintiff has alleged that he was required to work 48 to 72 hours a week and was coerced into performing labor contrary to what he was promised.

Having reviewed the issue de novo, the Court agrees with the analysis as set forth in the Recommendation. Plaintiff has sufficiently alleged threats of serious harm or abuse or threatened abuse of law or legal process to establish his forced labor claim against Defendant.

### 2.     Recruitment

Defendant argues that the "Recommendation does not point to a single fact that Marriott recruited Plaintiff because there is none." ECF No. 59 at 13. Defendant cites *Mojsilovic* for support. In *Mojsilovic*, the plaintiffs were recruited by the University of Oklahoma to work as research assistants through the Optional Practical Training Visa program. 2015 WL 1542273, at *1. An employee of the University demanded that in addition to plaintiffs' work for the University, they also work for his company, Pure Protein, LLC. *Id.* He threatened if they did not work for Pure Protein they would be fired from the University, which would cause them to lose their visas. *Id.* The Court dismissed plaintiffs' 18 U.S.C. § 1590 claim against Pure Protein because the plaintiffs failed to allege that Pure Protein "recruited, harbored, transported or obtained [p]laintiffs, as required by

§ 1590." *Id.* at *5. Here, Defendant argues that Marriott did not recruit Plaintiff because he came to Colorado for a different job. ECF No. 59 at 8-9. There are a few distinctions between *Mojsilovic* and this case. First, Plaintiff has not alleged a violation of 18 U.S.C. § 1590 (trafficking into servitude), "which is separate and distinct from liability for forced labor or services." *Gilbert v. United States Olympic Comm.*, 423 F. Supp. 3d 1112, 1133 (D. Colo. 2019). Plaintiff is not required to show that Marriott recruited Plaintiff. The second distinction is the alleged relationship that exists between Defendant and Alliance. Here, Plaintiff alleges "Defendant works with visa sponsors, including Alliance Abroad Group, LP ("Alliance"), in order to recruit and obtain labor for the St. Regis Aspen and other hotels and resorts owned and/or operated by Defendant." ECF No. 11 ¶ 31. In *Mojsilovic*, there was no allegation that Pure Protein had a relationship with the recruiter, except through the rogue University employee. Finally, Marriott was the host organization for Plaintiff's J-1 visa. In *Mojsilovic*, the University was the host organization for plaintiffs' visas, not Pure Protein. Plaintiff has alleged sufficient facts to plausibly allege at the pleading stage that Defendant was involved in Plaintiff's recruitment to work at St. Regis.

### 3.    Venture Liability

Defendant objects to the recommendation that "Plaintiff plausibly stated a venture liability TVPA claim against Defendant." ECF No. 58 at 17. The Tenth Circuit has held "to succeed in avoiding dismissal of [his] § 1589 claims against defendant[], plaintiff[] must plausibly allege that [he] provided labor or services that were procured by a method that is prohibited under the TVP[]A, and that defendant[] knowingly benefited from participating in this venture." *Bistline*, 918 F.3d at 871.

Defendant argues that the first element fails because Plaintiff fails to allege a violation of the TVPA. Marriott argues that "[w]ithout more, merely stating the consequences of leaving an internship is neither a threat nor coercion." ECF No. 59 at 13. The Court has already found that Plaintiff has alleged that he felt pressure to keep working for Marriott and "although an employer may legitimately advise an employee that termination may result in a change in visa status, utilizing that fact to force labor is not permitted by the law". *Mojsilovic*, 2015 WL 1542273, at *4.

The issue is whether Plaintiff has alleged facts sufficient to satisfy the "knowingly benefited" element. That is, did Marriott know, or should it have known it was benefiting from a violation of the TVPA. The Court agrees with the analysis in the Recommendation that Plaintiff has alleged enough facts to "nudge[] their claims across the line from conceivable to plausible." *Khalik*, 671 F.3d at 1990. Defendant worked with Alliance to recruit Plaintiff. Defendant signed the J-1 internship plan and thus knew Plaintiff's immigration status. Defendant knew it was asking Plaintiff to work over 32 hours a week. Defendant knew it was asking Plaintiff to perform work contrary to what was promised and described in the internship plan. This is enough to "provide plausible grounds that discovery will reveal evidence to support plaintiff's allegations." *Shero*, 510 F.3d at 1200. (internal quotation and citation omitted). Plaintiff should be allowed discovery into the relationship between Defendant and Alliance and what Defendant knew or should have known.

### B.     RICO (Claim Six)

Finally, Defendant objects to the Recommendation's finding that "Plaintiff: (1) sufficiently alleged an enterprise between Marriott and Alliance, and (2) sufficiently alleged that the enterprise engaged in unlawful predicate acts." ECF No. 59 at 14. Defendant argues that there is "no 'enterprise' related to Plaintiff's choice to transfer to [St. Regis]." *Id.* An "'enterprise' includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity" 18 U.S.C. § 1961. The Court has already found that Plaintiff plausibly alleges that Defendant and Alliance worked together to recruit Plaintiff and other J-1 interns to work at St. Regis.

A "'pattern of racketeering activity' requires at least two acts of racketeering activity." 18 U.S.C. § 1961(5). Defendant argues that a predicate act cannot be based on forced labor because that claim fails as a matter of law, but the Court has already ruled that Plaintiff has stated a valid claim for forced labor for himself and other J-1 interns who worked at St. Regis. Thus, Plaintiff's forced labor allegations for himself and other J-1 interns alone are enough to support the two predicate acts required for Plaintiff's RICO claim. However, the Court must also determine the sufficiency of Plaintiff's alleged RICO predicate act of mail and wire fraud. *See* ECF No. 33 ¶ 191.

"[W]hen mail fraud and wire fraud are the alleged RICO predicate acts, a plaintiff must meet heightened pleading standards under Rule 9(b) for those acts." *Nunag-Tanedo v. E. Baton Rouge Par. Sch. Bd.*, 790 F. Supp. 2d 1134, 1148–49 (C.D. Cal. 2011) (finding "[p]laintiffs have failed to sufficiently allege specific mailings or wire usage by

[d]efendants, and therefore they fail to satisfy the particularity requirement of Rule 9(b)"
in the TVPA context). Here, Plaintiff alleged that Defendant and Alliance communicated
by mail or wire to formulate the internship plan, the internship plan was sent by mail or
wire for each to sign, both Defendant and Alliance signed the internship plan using
DocuSign, and the signed internship plan was submitted by mail or wire to the State
Department for approval. ECF No. 11 ¶¶ 88-91. Plaintiff has alleged "what documents
[]were sent, [] to whom they were sent, the contents of the documents [], and how the
documents [] were fraudulent." *Wood v. Wells Fargo Bank*, N.A., No. 13-CV-01731-CMA-
KMT, 2013 WL 5763101, at *6 (D. Colo. Oct. 23, 2013) (finding the plaintiffs failed to
plead the RICO claim with particularity because "[p]laintiffs' Complaint lack[ed] specific
allegations regarding the exact time, place, and content of the alleged fraud"); *see also*
*Nunag-Tanedo,* 790 F. Supp. 2d at 1149 (C.D. Cal. 2011) (granting motion to dismiss as
to predicate acts of mail and wire fraud because plaintiffs did not specifically allege that
the defendants "used mail or wires, when they used them, or how any such use concerned
a scheme to defraud"). Unlike the plaintiffs in *Wood* or *Nunag-Tanedo*, the Court finds
Plaintiff has adequately pleaded the elements of mail or wire fraud because he has
alleged facts showing that Defendant used mail or wires to communicate about and sign
the internship plan that was submitted by mail or wire to the State Department knowing it
misrepresented the J-1 internship. Having reviewed the issue de novo, the Court agrees
with the Recommendation that Plaintiff has plausibly alleged a RICO claim based on
predicate acts of wire fraud and forced labor under the TVPA.

For these reasons, and those stated in the Recommendation, Defendant's objections to the Recommendation are **OVERRULED**.

### IV.    Plaintiff's Objections[2]

Plaintiff objects to the Magistrate Judge's Recommendation to dismiss Plaintiff's CCPA claims (Claims One and Two) for failure to allege a public impact as required by the statute and Plaintiff's COCCA claim (Claim Three) as time-barred by the statute of limitations. ECF No. 60 at 1-2.

### A.    CCPA Claims (Claims One and Two)

As to Claims One and Two, Plaintiff objects that the Magistrate Judge erred in concluding that Plaintiff failed to allege a public impact relevant to a CCPA claim. ECF 60 at 3. Plaintiff maintains that his FAC alleges that Defendant's labor practices have a significant public impact on the labor market in Pitkin County. *Id.* First, he asserts that the Magistrate Judge erred because the CCPA provides a private cause of action to any person who "[i]n the course of the person's business or occupation" is injured by the Defendant's deceptive trade practice." *Id.* at 3–4 (quoting Colo. Rev. Stat. § 6-1-113(1)(c) (2025)). Second, Plaintiff argues that CCPA protects workers as consumers when they pay to work for the defendant. *Id.* at 4–5.

---

[2] Plaintiff often refers to Judge Starnella as "magistrate." In the federal court system, magistrate judges are federal judges, and their proper title is "magistrate judge." *See* Judicial Improvements Act of 1990, Pub. L. No. 101-650, § 321, 104 Stat. 5089 (1990) ("After the enactment of this Act, each United States magistrate . . . shall be known as a United States magistrate judge."); *see also Stanley v. Wayne Cnty.*, No. 4:18-cv-012185-LVP-APP, 2021 WL 2646199, at *1 n.1 (E.D. Mich. June 28, 2021) ("Referring to a magistrate judge as 'magistrate' is the equivalent of calling a district judge 'district,' a bankruptcy judge 'bankruptcy,' a circuit judge 'circuit.' "). Thus, Judge Sartnella should be referred to as "magistrate judge," "Magistrate Judge Starnella," or "Judge Starnella."

To state a claim under the CCPA, a plaintiff must plausibly allege "(1) that the defendant engaged in an unfair or deceptive trade practice, (2) that the challenged practice occurred in the course of defendant's business, vocation, or occupation, (3) that it significantly impacts the public as actual or potential consumers of the defendant's good services or property, (4) that the plaintiff suffered an injury in fact to a legally protected interest, and (5) that challenged practice cause the plaintiff's injury." *Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142, 146–47 (Colo. 2003). The Court reviews the Recommendation as to the third element—whether Plaintiff plausibly alleged a significant public impact—de novo. *See* Fed. R. Civ. P. 72(b)(3).

There are three relevant considerations in determining whether a challenged practice significantly impacts the public: "(1) the number of consumers directly affected; (2) the relative sophistication of and bargaining power of the consumers affected; and (3) evidence that the challenged practice has previously impacted other consumers or has significant potential to do so in the future." *Rhino Linings USA*, 62 P.3d at 149. As these three considerations reflect, and the Magistrate Judge noted, "the CCPA is concerned with 'consumers of the defendant's good, services or property.'" ECF 58 at 19 (citing *Adams v. FedEx Ground Package Sys. Inc.*, 546 F. App'x 772, 776 (10th Cir. 2013)); *accord Hall v. Walter*, 969 P.2d 224, 234 (Colo. 1998) ("[A] more precise reading of [CCPA's] function requires an impact on the public as consumers of the defendant's goods, services, or property.") (internal quotation and citation omitted).

As far as the Court is aware no court has construed the CCPA as embracing claims brought by workers challenging a purported unfair labor practice. *See Adams*, 546 F.

App'x at 776 ("[T]he CCPA does not purport to provide a cause of action for private employment disputes."). Such an approach would shift the CCPA's focus from the protection of consumers in their consumption of goods and services. *See Hall*, 969 P.2d at 234. Plaintiff argues that courts interpreting the Washington Consumer Protection Act, a model for the CCPA, *see id.*, have permitted claims for false representations about wages or benefits. *See* ECF 60 at 5 (citing *Sanders v. W. Express, Inc.*, No. 20-cv-03137-SAB, 2021 WL 2772801, *5 (E.D. Wash. Feb. 11, 2021)).

While the Colorado Supreme Court has looked to the Washington Act as a model, as it specifically relates to the public impact requirement of the CCPA, the Court must "adhere to the CCPA's language." *Hall*, 969 P.2d at 234. As the Colorado Supreme Court stated in *Hall*, even with longstanding public interest jurisprudence in Washington and other jurisdictions, the CCPA requires the challenged practice to have an impact on the public as consumers of the defendant's goods, services, or property. *Id.*

Moreover, *Sanders* found that the plaintiff plausibly alleged a public impact because "it is reasonable to assume that Defendant represented to Plaintiff and the public that its employees would be paid for all work they did in accordance with state law." 2021 WL 2772801, at *5. Here, however, Plaintiff does not allege that Defendant made any representation to the public or facts that would allow the Court to draw such an inference. At most, Plaintiff alleges that Defendant made representations to himself and other J-1 visa applicants. ECF 33 at ¶¶ 146–47, 155–56. But Plaintiff does not allege how many applicants Defendant allegedly made such a representation to. *Cf. Adams*, 546 F. App'x

at 776 (finding no public impact where plaintiff did not indicate the percentage of other employees that were harmed).

## B.    COCCA (Claim Three)

Plaintiff objects to the Magistrate Judge's recommendation that Plaintiff's COCCA claim be dismissed because it is subject to Colorado's catch-all two-year statute of limitation under Colo. Rev. Stat. § 13-80-102(1)(i). Plaintiff argues that his COCCA claim is subject to a five-year statute of limitation under Colo. Rev. Stat. § 13-80-103.8(1)(d).

To resolve the dispute, the Court must interpret Colo. Rev. Stat. § 13-80-103.8:

§ **13-80-103.8. Limitation of *civil forfeiture* actions related to criminal acts**

(1) The following actions shall be commenced within five years after the cause of action accrues, and not thereafter:

. . .

(d) All civil actions brought pursuant to article 17 of title 18, C.R.S.[]

(emphasis added). Plaintiff argues that § 13-80-103.8(1)(d) is clear and unambiguous. And because Plaintiff's COCCA claims are brought under Colo. Rev. Stat. § 18-17-106, the five-year statute of limitation applies. Magistrate Judge Starnella and other Judges in this District disagree that the statute is ambiguous when the title of the statute limits the meaning to civil forfeitures. *See* ECF No. 58 at 20-24; *see also RMCO Holdings, LLC v. Golden Trading & Transp., LLC*, No. 22-CV-00650-NYW-KLM, 2023 WL 3815069, at *13 (D. Colo. June 5, 2023) ("Respectfully, the Court disagrees that the statutory language here is "clear and unambiguous,' as [p]laintiffs claim.")

Plaintiff argues "that the Colorado Supreme Court has made clear that a statute's 'title cannot limit the plain meaning.'" ECF No. 60 at 7. (quoting *Arvada Vill. Gardens LP v. Garate*, 529 P.3d 105, 108 (Colo. 2023)). In *Arvada Vill. Gardens*, the Colorado Supreme Court was tasked with interpreting a federal statute, section 9058 of the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"). *Arvada Vill. Gardens*, 529 P.3d at 107. The Colorado Supreme Court had to determine whether the provision of the statute requiring a thirty-day notice period before a landlord may evict a tenant was still in effect even though the title of the section was "Temporary moratorium on eviction filings" and the subsection before the relevant subsection referred to a "120-day period beginning on March 27, 2020" restricting a landlord's ability to initiate any legal action to recover the dwelling for nonpayment of rent. *Id.* at 107 (quoting 15 U.S.C. § 9058). The Colorado Supreme Court held that the CARES Act's eviction notice provision remained in effect after the expiration of the moratorium provision because "a title cannot limit the plain meaning of a more specific provision within a statute." *Id.* at 108. In *Arvada Vill. Gardens*, the Colorado Supreme Court also recognized that a statute's title "is useful for purposes of statutory interpretation only when it shed[s] light on some ambiguous word or phrase in the statute itself." (internal quotation and citation omitted).

"When the federal courts are called upon to interpret state law, the federal court must look to the rulings of the highest state court, and, if no such rulings exist, must endeavor to predict how that high court would rule." *Stickley v. State Farm Mut. Auto. Ins. Co.*, 505 F.3d 1070, 1077 (10th Cir. 2007). In addition to its holding in *Arvada Vill. Gardens*, the Colorado Supreme Court has also instructed "[i]n determining the meaning

of a statute . . . [t]he language at issue must be read in the context of the statute as a whole and the context of the entire statutory scheme. . . . Additionally, the heading of a statute, although not dispositive of legislative intent, can aid in determining legislative intent. *Jefferson Cnty. Bd. of Equalization v. Gerganoff*, 241 P.3d 932, 935-36 (Colo. 2010) (internal quotations and citations omitted). The Colorado Supreme Court has also advised that courts "must avoid constructions that would render any words or phrases superfluous or lead to illogical or absurd results." *Doubleday v. People*, 364 P.3d 193, 196 (Colo. 2016). The decision in *Arvada Vill. Gardens*, did not overrule the Colorado Supreme Court's prior guidance in *Gerganoff* or *Doubleday* in how to interpret Colorado Statutes.

This Court agrees with the Magistrate Judge's reliance on the detailed and in-depth analysis in *RMCO Holdings*, determining Colorado's two-year catch-all statute of limitations under Colo. Rev. Stat. § 13-80-102(1)(i) applies to COCCA claims. 2023 WL 3815069, at *14. In *RMCO Holdings*, Judge Wang summarized a survey of the relevant case law in this District and Colorado State Court. 2023 WL 3815069, at *10-11. The courts in this District, applying a five-year statute of limitations, have done so without analysis. *See, e.g.*, *Goodwin v. Bruggeman-Hatch*, No. 13-cv-02973-REB-MEH, 2014 WL 4723882 (D. Colo. July 24, 2014) (" Plaintiff's RICO claims are governed by a four-year statute of limitations, *Agency Holding Corp. v. Malley–Duff Associates, Inc.,* 483 U.S. 143, 156 (1987), and his Colorado Organized Crime Control Act ("COCCA") claims are governed by a five-year statute of limitations, Colo.Rev.Stat. § 13–80–103.8(1)(d)."). In *Todd Holding Co. v. Super Valu Stores, Inc.*, 874 P.2d 402, 405 (Colo. App. 1993), the

21

Colorado Court of Appeals noted that there is a "specific statute of limitations for forfeiture actions" under COCCA, but otherwise, "no specific statute of limitations is applicable" to COCCA. Thus, implying § 13-80-103.8 does not apply to a COCCA claim in the civil context. A more recent Colorado trial court applied a two-year statute of limitations relying on the holding in *Todd Holding*. *See Scolari v. Compass Health Systems*, No. 2019CV31128, 2021 WL 6752910, at *5 (Colo. Dist. Ct. Dec. 16, 2021). The court in *Scolari* also found that § 13-80-103.8(1)(d) "is, by its plain text, narrow in scope" and "[r]eading otherwise would render the legislative title meaningless. *Id.* This Court tends to agree, failing to take into consideration the "civil forfeiture" language in the title of Colo. Rev. Stat. § 13-80-103.8 would lead to an absurd result. The General Assembly included the language regarding civil forfeitures in the title of the statute for some reason. Here, Plaintiff does not claim that his COCCA claims relate to a civil forfeiture action. Therefore, § 13-80-103.8 does not apply to Plaintiff's claims. Having reviewed the issue de novo, the Court agrees with the analysis in the Recommendation and finds that Plaintiff's COCCA claim is time-barred.

For these reasons, and those stated in the Recommendation, Plaintiff's objections to the Recommendation are **OVERRULED**.

### C.    Plaintiff's Request for Certification

Plaintiff argues for the first time in his Objection that the Court should certify three questions to the Colorado Supreme Court:

1.    Whether a plaintiff must establish a "significant public impact" in order to state a claim pursuant to the Colorado Consumer Protection Act's private cause of action, § 6-1-113(1), C.R.S.

   2.     Whether a private plaintiff can plausibly plead any "significant public
impact" element of a Colorado Consumer Protection Act claim by alleging
that a challenged practice harmed workers in the local labor market.

   3.     Whether claims brought under the Colorado Organized Crime
Control Act are subject to the five-year statute of limitations enumerated in
section 13-80-103.8(1)(d), C.R.S.

ECF No. 60 at 2. A request made for the first time in an Objection is not proper, and the

Court need not consider it. *Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996)

("Issues raised for the first time in objections to the magistrate judge's recommendation

are deemed waived."); *see, e.g.*, *Stout v. Seitz*, No. 17-cv-01904-CMA-STV, 2018 WL

2948222, *4 (D. Colo. June 13, 2018) (declining to consider arguments regarding

dismissal under Rule 12(b)(6) where the plaintiff raised them for the first time in her

objections to a recommendation).

   Colorado Rule of Appellate Procedure 21.1 authorizes the Colorado Supreme

Court to answer a question of state law certified to it by a federal court if the question

"may be determinative of the cause then pending in the certifying court and as to which it

appears to the certifying court that there is no controlling precedent in the decisions of the

supreme court." Colo. App. R. 21.1(a). "Whether to certify a question of state law to the

state supreme court is within the discretion of the federal court." *Painter v. Midwest

Health, Inc.*, No. 21-3195, 2022 WL 17332734, at *7 (10th Cir. Nov. 30, 2022) (citation

omitted). "Certification is not to be routinely invoked whenever a federal court is presented

with an unsettled question of state law." *Armijo v. Ex Cam, Inc.*, 843 F.2d 406, 407 (10th

Cir. 1988) (internal citation omitted). When federal courts "see a reasonably clear and

principled course" for resolving "arguably unsettled question[s] of state law," they may

"follow it [themselves]." *Pino v. United States*, 507 F.3d 1233, 1236 (10th Cir. 2007) (internal citation omitted).

The Court declines to certify these questions *sua sponte* at this late stage in the proceedings. Specific to the question regarding the statute of limitation for COCCA, as discussed above, Judge Wang in *RMCO Holdings*, and Magistrate Judge Starnella in her Recommendation, provided strong analysis regarding this question. Even if the Court were to consider the request, the Court finds that there is sufficient law existing related to the legal issues presented to resolve Plaintiff's Objections. The Court does not find there is a basis to certify these questions to the Colorado Supreme Court.

## V.    CONCLUSION

The Court will accept and adopt Magistrate Judge Starnella's recommendation in full. Plaintiff's human trafficking claims (Claims Four and Five) and his RICO claim (Claim Six) will be permitted to proceed. Plaintiff's remaining claims will be dismissed.

For the reasons set forth above, it is **ORDERED** that:

1. Defendant's Objection to the Recommendation, ECF No. 59, is **OVERRULED**;

2. Plaintiff's Objection to the Recommendation, ECF No. 60, is **OVERRULED**;

3. The Recommendation, ECF No. 58, is **ACCEPTED and ADOPTED**;

4. Defendant's Motion, ECF No. 36, is **GRANTED IN PART** and **DENIED IN PART**;

5. Plaintiff's Claims One and Two (CCPA) are **DISMISSED WITHOUT PREJUDICE** for failure to state a claim; and

6. Plaintiff's Claim Three (COCCA) is **DISMISSED WITH PREJUDICE** as barred

by the statute of limitations.

DATED:  March 31, 2025

BY THE COURT:

_____

REGINA M. RODRIGUEZ
United States District Judge