IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 1:23-cv-03308-RMR-KMS

DANIEL ESTEBAN CAMAS LOPEZ,
individually and on behalf of all similarly
situated persons,

    Plaintiff,

v.

MARRIOTT INTERNATIONAL, INC.,

    Defendant.

## DEFENDANT MARRIOTT INTERNATIONAL, INC.'S
## MOTION FOR LEAVE TO FILE SUR-REPLY

The purpose of a reply brief is to respond to arguments made in opposition to a motion, not to assert new legal theories because it has become clear to the movant that his motion must be denied. But the latter is exactly what Plaintiff's Reply in support of his Motion for Class Certification (Dkt. No. 87) does in this case. Accordingly, Defendant Marriott International, Inc. ("Marriott") seeks leave to file a sur-reply to address the new arguments, assertions, and case law raised by Plaintiff's Reply.

As the Court recognized at the motion to dismiss stage, this case concerns Plaintiff's allegations that the St. Regis Hotel in Aspen, Colorado (the "Hotel") hires J-1 visa interns and trainees "to provide labor that was substantially different from what had been presented to them" in their Training/Internship Placement Plan ("Plan") documents. Dkt. No. 65 at 2. Specifically, Plaintiff alleged that he did not receive the training he desired during his six-week internship at the Hotel and he worked more hours than he wished. *See* Dkt. No. 33 (Plaintiff's First Amended Complaint), ¶¶ 105, 110, 113. In order

1

to survive dismissal on his forced labor and racketeering claims, Plaintiff alleged that his J-1 visa sponsor, non-party Alliance Abroad Goup, LP ("Alliance"), "threatened deportation" when Plaintiff raised concerns regarding his internship. *See* Dkt. No. 65 at 6 (holding that, for the forced labor claim, the alleged threat of deportation was "sufficient to meet the 'serious harm' element under either § 1589(a)(2) or (4) or 'abuse of the legal process' element under § 1589(a)(3)" at pleadings stage), 14 (holding that allegations of forced labor through an alleged threat by his sponsor supported his RICO claim at pleadings stage).

Now after discovery, however, Plaintiff does not deny, nor could he, Marriott's assertion that his allegations are disproved.[1] As a result, Plaintiff now admits that he was never threatened or coerced by anyone into working at the Hotel. *See* Dkt. No. 79 at 11 (citing documents and testimony). Moreover, it has been established in discovery that Plaintiff freely quit his internship at the Hotel *before* ever raising a concern with Alliance or the Hotel, and *after* securing a position at another hotel that promised him higher pay and a sign-on bonus because that hotel was understaffed. *See id.* at 10–11 (citing documents and testimony). Indeed, at several points throughout his internship at the Hotel, Plaintiff reported that his "Training Plan [was] on track." *See id.*

Given this evidentiary record, in moving for class certification Plaintiff unsurprisingly ignored the lack of any evidence, much less common proof, that he or anyone else was coerced into forced labor. Instead, Plaintiff asked the Court to certify a class of all J-1 trainees and interns that worked at the Hotel over the past nine years on

---

[1] Marriott raised Plaintiff's admissions in its Opposition to Plaintiff's Motion for Class Certification. Plaintiff's Reply does not deny the admissions but rather seeks to ignore them by relying on a new, wholly unsupported legal theory.

2

the grounds that the putative class members did not "receive advanced training in the hospitality industry" that was "promised them," but were instead "used to fill ordinary labor needs at the St. Regis." Dkt. No. 67 at 1. Plaintiff claimed that these J-1s were required "to perform ordinary hospitality work" despite promises of educational training and cultural experiences under the J-1 visa program. *Id.* at 6. In an attempt to shoehorn these theories into his forced labor and racketeering claims, and directly contrary to the undisputed evidence of his own experience, Plaintiff argued that a J-1 may be financially vulnerable and thus may continue working at the Hotel when they otherwise would have quit. *See id.* at 14.

Setting aside the fact that the legal theory espoused in Plaintiff's Motion does not support a forced labor or racketeering claim, in its Opposition, Marriott thoroughly demonstrated that even if his claims were viable (which they are not), they cannot be certified as a class action. *See* Dkt. No. 79. As Marriott explained, among other things, individualized issues will clearly predominate at any trial in this action. The Court would be required to consider the following individualized questions for each class member:

- What tasks the J-1 actually performed at the Hotel,
- Whether those tasks matched what was set out in the J-1's Plan,
- Whether the J-1 received the training described in their Plan,
- Whether the tasks performed by a J-1 could constitute "ordinary labor,"
- The hours trained by the J-1,
- The cultural experiences the J-1 participated in, and
- Based on the J-1's unique circumstances, whether any alleged coercion caused the J-1 to continue employment at the Hotel when they otherwise would have quit.

3

What is more, in contrast to Plaintiff's complete dearth of common evidence, Marriott put forward sworn testimony from current and former J-1s that establishes that, among other things, each J-1 had (1) unique and individualized Plans, (2) received individualized training, (3) participated in different cultural activities, and (4) had unique goals. *See* ECF No. 79–1 at 1–35. This sworn testimony provides the Court with much more than "happy camper" accounts of J-1 experiences. Not only does the evidence show that no one has ever asserted the type of claim Plaintiff makes, but it also illustrates the unique experiences of each J-1 and the individualized evidence this Court would be required to consider at trial. It is clear that a class cannot be certified.

Ostensibly recognizing that his Motion is doomed, in his Reply, Plaintiff now claims the opposite of what he said in his Motion. Whereas Plaintiff moved for certification by asserting that his claim was based on J-1s not "receiv[ing] advanced training in the hospitality industry" and instead being required "to perform ordinary hospitality work," Dkt. No. 67 at 1, 6, Plaintiff now argues that "whether the tasks described in the Plan were actually performed, whether participants participated in cultural activities, participants' specific hours worked or time off received, or other specific staffing levels at the St. Regis at any given time" are "not necessary to establish liability pursuant to Plaintiff's legal theories and are not at the heart of Plaintiff's claims." Dkt. No. 87 at 4–5. Plaintiff reverses course and disavows any claim based on whether a J-1's Plan was followed, asserting that with respect to the "training plains" his "legal theories do not rely on" establishing whether or not they were an accurate description of the experience. *Id.* at 14. At bottom, according to Plaintiff's Reply, his new legal theory now does not depend on whether or not a J-1 received the internship "promised" to them.

4

Rather, Plaintiff asserts a new legal theory—one that is not only novel but seeks to turn the law on its head. Specifically, Plaintiff now asserts that "the relevant inquiry at the heart of Plaintiff's claims depends on the purposes for which Marriott used the J-1 program and the types of roles J-1 trainees and interns filled."[2] Dkt. No. 87 at 4. In other words, Plaintiff now seeks to certify forced labor and racketeering claims not based on any J-1 being tasked with work outside of what was described in their Plan, much less being forced to work at the Hotel against their will, but instead based on what Marriott's own purposes for employing them were and whether they worked in positions (even if they received the promised training) that could be filled by full-time or part-time employees. *See id.* at 3.

What Plaintiff's lawyers now ask this Court to endorse, and certify as a class action, is a theory of forced labor and racketeering that permits a claim to proceed ***even*** where a J-1 received everything described in her training Plan solely on the basis that the work-based training performed by the J-1 contributed to the Host Organization's labor mix. Unsurprisingly, Plaintiff identifies no legal authority supporting this theory.[3] Instead, it is clear that Plaintiff's issue with Marriott's employment of J-1s to perform work, as part of their training, at the Hotel is little more than an attack on the J-1 program itself. Such an

---

[2] Lest Plaintiff try to argue that his prior theory somehow encapsulated his new one, Plaintiff does not once describe his claim in this way in his Motion and does not even use the words "types of roles" in his moving papers, despite now claiming that it is the "core" question for determining liability. *See* Dkt. No. 67.

[3] Not only is Plaintiff's theory at direct odds with what the law requires to establish a forced labor claim, it also conflicts with the requirements of the J-1 visa program. The regulations are clear that a J-1 program must provide "work-based learning." 22 C.F.R. § 62.22(b)(1)(i). This includes that the J-1 must be "performing work as a component of his/her training experience…" 72 F.R. 33669-01 (2007). It is axiomatic that a J-1's training experience will contribute to the business and services provided by the employer.

5

attack is clearly not the proper subject of private litigation, much less a class action for forced labor and racketeering.

Plaintiff's Reply does not stop there. Further illustrating the baseless nature of his new theory, Plaintiff's lawyers incredibly claim that even J-1s, such as those that have provided sworn testimony that they received exactly the work-based training described in their Plans and that they very much enjoyed their experience at the Hotel, are still members of the putative class Plaintiff seeks to represent. Plaintiff goes so far to distort the law to now argue that other J-1s' "***positive experiences…are not dispositive of the legal questions at the heart of this case***." *Id.* at 11 (emphasis added). In other words, Plaintiffs' lawyers ask this Court to certify a class, for purposes of his forced labor and racketeering claims, that includes J-1s that ***expressly disavow*** being forced to perform any labor or being fraudulently induced to take on a J-1 visa internship. From all of this, it is now crystal clear that this case has little to do with any alleged mistreatment of Plaintiff during his time at the Hotel (there was none), but rather whatever theory his lawyers can dream up to avoid the legally required result.[4]

In any event, Marriott is entitled to respond and explain why Plaintiff's entirely new theory, which he attempts to support through new assertions regarding the scope of his claims and case law not cited in his Motion, does not support certification. It is well-established in the Tenth Circuit that, "[g]enerally, the nonmoving party should be given an

---

[4] Courts must be wary of implicit pleas by plaintiffs' counsel, such as here, to temporarily certify a class, on any theory at all, so that they can try to settle the case at a higher value. The Third Circuit has addressed this issue head-on, explaining that questionable certification decisions "create unwarranted pressure to settle non-meritorious claims on the part of defendants," and as a result, the "potential for unwarranted settlement pressure is a factor we weigh in our certification calculus." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 310 (3d Cir. 2008) (quotations omitted).

6

opportunity to respond" to new arguments and assertions made by the movant in the reply brief. *Green v. New Mexico*, 420 F.3d 1189, 1196 (10th Cir. 2005). Accordingly, the Tenth Circuit has explained that if the district court "preclude[s] a surreply, then the court can avoid error *only* by not relying on the new materials and arguments raised in the movant's reply brief." *Pippin v. Burlington Res. Oil and Gas Co.*, 440 F.3d 1186, 1192 (10th Cir. 2006) (emphasis added). As this Court has recognized, leave to file a sur-reply should be granted in circumstances similar to those now before the Court. *See, e.g.*, *Torres v. Polis*, 2025 WL 622558, at *6 (D. Colo. Feb. 26, 2025) (Starnella, M.J.) (granting leave to file sur-reply to respond to new arguments); *Eaves v. Cox*, 2024 WL 4528145, at *2 (D. Colo. Oct. 17, 2024) (Starnella, M.J.) (granting leave to file sur-reply to address admissions in reply brief).

Marriott would have addressed the shortcomings of Plaintiff's new theory in its Opposition had Plaintiff asserted it in his Motion. This Court should therefore grant Marriott leave to file a sur-reply brief to address Plaintiffs' new arguments and assertions. Marriott's proposed sur-reply brief is attached hereto as **Exhibit A**. Alternatively, this Court should disregard Plaintiffs' new theory and deny his Motion for Class Certification.

## CERTIFICATION PURUSANT TO D.C. COLO. LCivR.7.1

Pursuant to Local Civil Rule 7.1(a), counsel for Marriott conferred with counsel for Plaintiff via e-mail on August 14 and 15, 2025, regarding the relief sought by this Motion. Plaintiff opposes this Motion.

Date: August 15, 2025

/s/ Michael P. O'Day
Michael P. O'Day
Ellen E. Dew
William W. Reichart III

DLA PIPER LLP (US)
650 S. Exeter St.
Suite 1100
Baltimore, MD 21202
Tel.: (410) 580-3000
Fax: (410) 580-3001
michael.oday@us.dlapiper.com
ellen.dew@us.dlapiper.com
wes.reichart@us.dlapiper.com

*Counsel for Defendant Marriott International, Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 15th day of August, 2025, I filed the foregoing document and cause the same to be served on all counsel of record via the Court's CM/ECF system.

/s/ Michael P. O'Day
Michael P. O'Day