# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Case No. 1:23-cv-03308-RMR-KMS

DANIEL ESTEBAN CAMAS LOPEZ,
individually and on behalf of all similarly
situated persons,

      Plaintiff,

v.

MARRIOTT INTERNATIONAL, INC.,

      Defendant.

---

**DEFENDANT MARRIOTT INTERNATIONAL, INC.'S
SUR-REPLY IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION**

---

**ORAL ARGUMENT REQUESTED**

DLA PIPER LLP (US)

*/s/ Michael P. O'Day*
Michael P. O'Day
Ellen E. Dew
William W. Reichart III

DLA PIPER LLP (US)
650 S. Exeter St.
Suite 1100
Baltimore, MD 21202
Tel.: (410) 580-3000
Fax: (410) 580-3001
michael.oday@us.dlapiper.com
ellen.dew@us.dlapiper.com
wes.reichart@us.dlapiper.com

*Counsel for Defendant Marriott International, Inc.*

## <u>TABLE OF CONTENTS</u>

INTRODUCTION .......................................................................................................... 1

ARGUMENT ............................................................................................................... 4

    A.    Establishing Predominance Requires Common Proof on the Elements of the Claims, Not Merely an Abstract "Common Legal Theory." ............................... 4

    B.    Plaintiff's Forced Labor Claims Require Individualized Proof. ......................... 6

        1.    The Mere Violation of a Visa Regulation Does Not Qualify as Abuse of the Law. .................................................................................................. 6

        2.    There Is No Common Evidence that Marriott Abused the Law. ............. 9

        3.    Individualized Issues Predominate the Causation Element. ............... 10

    C.    The RICO Claim Is Also Individualized. ....................................................... 12

        1.    Plaintiff Offers No Common Evidence of an Enterprise. ..................... 12

        2.    Causation Is an Individualized Issue. ................................................. 14

        3.    Injury is an Individualized Issue. ........................................................ 15

CONCLUSION ......................................................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alvarado v. Universidad Carlos Albizu*,
2010 WL 3385345 (S.D. Fla. Aug. 25, 2010) ........................................................ 7, 8

*Boyle v. U.S.*,
556 U.S. 938 (2009) ................................................................................................ 12

*Bridge v. Phoenix Bond & Indem. Co.*,
553 U.S. 639 (2008) ............................................................................................ 14, 15

*Carlson v. Town of Mountain Vill.*,
2019 WL 1331977 (D. Colo. Mar. 25, 2019) ........................................................... 12

*CGC Holding Co., LLC v. Broad & Cassel*,
773 F.3d 1076 (10th Cir. 2014) ............................................................................... 12

*Comcast Corp. v. Berhend*,
569 U.S. 27 (2013) ..................................................................................................... 4

*David v. Signal Intern., LLC*,
2012 WL 10759668 (E.D. La. Jan. 4, 2012) ..................................................... *passim*

*Dockery v. Heretick*,
2021 WL 3929707 (E.D. Pa. Sept. 1, 2021) ............................................................ 13

*Erica P. John Fund, Inc. v. Halliburton Co.*,
563 U.S. 804 (2011) ................................................................................................... 5

*Garnica v. Edwards*,
72 F. Supp. 3d 411 (S.D.N.Y. 2014) ......................................................................... 7

*Kang v. POSCO AAPC, LLC*,
2025 WL 1078764 (S.D. Ind. Apr. 9, 2025) ............................................................... 9

*Menocal v. GEO Group, Inc.*,
882 F.3d 905 (10th Cir. 2018) .................................................................................. 11

*Muchira v. Al-Rawaf*,
850 F.3d 605 (4th Cir. 2017) ................................................................................... 7, 8

*Sherman v. Trinity Teen Solutions*,
84 F.4th 1182 (10th Cir. 2023) ............................................................................... 5, 6

*Speerly v. Gen. Motors, LLC*,
143 F.4th 306 (6th Cir. 2025) (en banc) .................................................................... 4

*Torres v. S.G.E. Management, LLC*,
    838 F.3d 629 (5th Cir. 2016) ................................................................................ 15

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ........................................................................................... 5

**Statutes**

18 U.S.C. § 1589(c)(1) ............................................................................................ 7

18 U.S.C. § 1964(c) .............................................................................................. 15

**Regulations**

22 C.F.R. § 62.22(b)(1)(i) ........................................................................................ 9

72 F.R. 33669–01 ............................................................................................ 9, 10

**INTRODUCTION[1]**

Binding precent requires Plaintiff to prove, now, that the elements of his forced labor and RICO claims can be adjudicated as to each putative class member with common proof at trial. Rather than address that burden, Plaintiff's Reply attempts to bypass it altogether by advancing a new, abstract "theory" divorced from the evidentiary record and the elements of his claims. In that manner, Plaintiff's Reply confirms that he cannot satisfy Rule 23's requirements. His Motion must be denied.

For two years, Plaintiff claimed that Marriott "coerced" him and other J-1s into providing "cheap labor" and failed to deliver the training promised in their Plans.[2] He used that theory to avoid dismissal, alleging he could show coercion via threats of deportation. He abandoned his threats of deportation theory in his Motion because his deposition testimony showed it was baseless from the start and instead argued that Marriott deprived J-1s of advanced hospitality training by tasking them with "ordinary labor."[3]

Marriott's opposition showed that Plaintiff's claims were factually wrong and inherently uncertifiable: whether any J-1 was "coerced" or "defrauded" into providing "ordinary labor"—instead of receiving the hospitality training specified in their Plan—turns on participant-specific facts. Recognizing that Marriott's evidence precludes certification,

---

[1] Unless otherwise stated, capitalized terms have the same meanings as defined in Marriott's Opposition ("Opp.") to Plaintiff's Motion for Class Certification. *See* Dkt. No. 79.

[2] Plaintiff's claims in this action have, up until now, relied on the actual work he alleges that he was required to perform. For example, in opposing Marriott's Motion to Dismiss, Plaintiff described his claim as based on his allegations "that *the job he was actually asked to perform* 'could not reasonably be described as compliant with the *Plan* or the requirements of the J-1 visa program,'…and that he was *required to perform a significant amount of unskilled, non-professional labor.*" Dkt. No. 36 at 3 (emphasis added).

[3] Plaintiff argued that J-1s did not "receive advanced training in the hospitality industry" that was "promised them," but were instead "used to fill ordinary labor needs" by being tasked with "perform[ing] ordinary hospitality work." Dkt. No. 67 at 1, 6.

Plaintiff now ignores it and attempts to sidestep the predominance requirement entirely. To do so, he claims that it does not matter whether J-1s received the training they sought, in full compliance with their Plan, or whether their participation benefitted them.  All that is relevant, Plaintiff now claims, is "the purpose for which Marriott used the J-1 program and the types of roles J-1 trainees and interns filled."  Reply at 4.  According to the Plaintiff's Reply, his claims turn on whether Marriott violated the J-1 regulations by "impermissibly" relying on J-1s to assist in the Hotel's operations by performing work that could have otherwise been performed by non-J-1 employees. *Id.* at 3.

Plaintiff's new theory is unworkable: the J-1 program *requires* hosts to provide J-1s with at least 32 hours per week of "*work-based*" training. Under Plaintiff's reasoning, however, no Host Organization could lawfully operate a J-1 program because it is necessarily true that any labor a J-1 performs for a Host Organization could otherwise be carried out by an hourly employee.  Thus, Plaintiff's theory is little more than an attack on the J-1 program itself.

Nevertheless, even if Plaintiff's theory could hold water (it doesn't), any alleged technical violation of the J-1 regulations has **nothing to do** with coercing any J-1 to work at the Hotel or defrauding any J-1 to accept a position at the Hotel.  Plaintiff points to no evidence, much less common evidence, that J-1s would not have trained at the Hotel if they thought a local worker might get fewer hours because of their presence, for example. As such, Plaintiff's Reply confirms he cannot certify a class because he has no common proof of the elements of his actual claims.

To start, Plaintiff's Reply confirms he cannot prove his forced labor claims with common proof. Those claims require proving Marriott knowingly obtained labor through

*abuse of law or legal process* and did so *to purposely exert pressure* and to *cause* that person to continue working. That required proof turns on individualized facts, including whether Marriott violated the law (i.e., did a specific J-1's experience match what was promised to that person), and, if so, whether that violation caused any participant to subjectively feel compelled to keep working when they otherwise would quit. A participant who willingly worked and continued to do so because they received the training that they signed up for has no forced labor claim. These circumstances are true regardless of an alleged technical regulatory violation. And Plaintiff's effort to pursue an "attempted" forced labor claim compounds the individualized problems because it would require examining whether Marriott took specific, intentional steps toward coercing each participant.

Plaintiff's new theory also ignores the core RICO elements—enterprise, predicate act, and causation—confirming they cannot be proven with common evidence. Plaintiff points to no common evidence on the first element, conceding that the trier of fact would need to examine the various relationships between eight sponsors, several recruiters, and dozens of Marriott employees over nine years to determine whether an enterprise existed and which, if any, class members were exposed to it.

The predicate act element is equally individualized, even if an incorrect statement on a particular Plan about whether participants would "displace" local workers or "serve to fill a labor need" could establish forced labor or a RICO predicate (it cannot). This individuality exists because Plans differed significantly and were filled out by eight sponsors, some with input from various Marriott employees, and some without. And the Hotel's staffing differed by year, season, and department. As did the variability of local

3

worker availability. So even proving a misstatement on any particular Plan would require employee-, participant-, sponsor-, and time-specific evidence.

Finally, Supreme Court authority dictates that causation under RICO requires a "direct relation" between the predicate act and the alleged injury, not the "but for" causation Plaintiff advances. That's exactly what the *David* court held in a J-1 case in response to the same causation argument Plaintiff's advocates here. As in that case, determining whether Marriott's alleged conduct "directly caused" a given participant's claimed injury demands participant-specific evidence.

Plaintiff's Reply thus confirms that no class can be certified.

## ARGUMENT

### A. Establishing Predominance Requires Common Proof on the Elements of the Claims, Not Merely an Abstract "Common Legal Theory."

Plaintiff's Reply urges this Court to merely adopt, at least for now, his "common legal theory" as sufficient to certify a class. *See* Reply at 5 (arguing whether or not his legal theory is sufficient to state a claim is irrelevant because it is common and, in his view, sufficiency is a merits question). That is not the correct standard. In *Comcast Corp. v. Brehend*, the Supreme Court rejected Plaintiff's argument here. 569 U.S. 27, 38 (2013). The Court reversed the trial court's certification order because the trial court erroneously refused to consider one of the defendants' arguments on the mistaken view that an attack on whether a theory of liability is legally cognizable was a merits issue that could not be decided at class certification. *Id.*

Under this rubric, Circuit Courts have similarly found that district courts "***must not defer*** merits questions bearing on commonality and predominance until summary judgment." *Speerly v. Gen. Motors, LLC*, 143 F.4th 306, 317 (6th Cir. 2025) (en banc)

(emphasis added).  As the Sixth Circuit explained, "[i]n conducting a Rule 23 analysis, the district court will inevitably address issues that overlap with the merits inquiry.  It 'cannot be helped' that commonality and predominance's **element-by-element**, **claim-by-claim** inquiry implicates the merits of each claim."  *Id*. (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)) (reversing certification order because district court did not properly evaluate what would be required to prove the claims at issue); *see also Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011) (explaining that the predominance analysis begins, of course, **with the elements of the underlying cause of action**.") (emphasis added). That is because the district court must consider how a case will actually be tried, including what evidence is required to prove a claim (the elements, not a legal theory), and whether that evidence is common or not.

Plaintiff's reliance on *Sherman v. Trinity Teen Solutions*, 84 F.4th 1182, 1193 (10th Cir. 2023), to argue otherwise is incorrect.  Not only is that case factually distinguishable, but it highlights the need for this Court to consider each of the elements.   *Sherman* involved a claim that adolescent girls were sent by their parents to a ranch for what was represented to them as therapy, but they were "forced to work long hours without pay under threat of serious harm." *Id*. at 1186.  There, in support of their class certification motion, "Plaintiffs submitted declarations for themselves and thirty-four putative class members alleging similar experiences" in the work they were required to perform, along with an expert opinion that class members had "highly similar" injuries and had been "subject to similar conditions while residents at [the camp]."  *Id.*[4]  The district court denied

---

[4] Here, Plaintiff has not submitted *any* declarations or evidence concerning his own experience, let alone that of any other J-1.  Nor has he submitted expert testimony.  The *only* evidence before the Court concerning J-1 experiences at the Hotel comes from the

certification on the basis that determining damages would "depend upon, among other things, the parent/guardian's knowledge and scope of consent" and thus will require individualized fact-finding. *Id*. at 1191.

On appeal, the Tenth Circuit reversed and remanded for further findings because the district court did exactly what Plaintiff invites here: it "did not discuss the elements of Plaintiff's claims in its predominance analysis" and instead "refer[ed] to its commonality analysis and reemphasiz[e]d the need for individualized inquiries into damages."  *Id*. at 1195.  As the Circuit Court explained, "[t]o show liability for their [forced labor] claim under § 1589(a), the class would need to prove (1) that Defendant knowingly (2) coerced class members…(3) to perform labor" which requires showing "knowledge, causation, and whether the putative class members engaged in labor" against their will. *Id.*  Here, Plaintiff has not proven that those elements can be established through common evidence, much less in one stroke without individual questions of liability.

**B.    Plaintiff's Forced Labor Claims Require Individualized Proof.[5]**

Plaintiff's Reply now says that the only theory of forced labor he is trying to certify is coercion by abuse of the legal process.  Reply at 7.  But he has not established that he can prove any element of that claim with common evidence.

**1.    The Mere Violation of a Visa Regulation Does Not Qualify as Abuse of the Law.**

Plaintiff's theory of abuse of the law is untethered to what the law requires.  The forced labor statute defines "abuse or threatened abuse of law or legal process" as "the

---

declarations submitted by current and former J-1s that describe their unique and individualized experiences training at the Hotel.  *See* ECF No. 79–1.

[5] Both Parties have submitted that the arguments on the forced labor claims apply to both the federal and state claims asserted by Plaintiff.

use or threatened use of a law or legal process, whether administrative, civil, or criminal, in any manner or for any purpose for which the law was not designed, *in order to exert pressure on another person to cause that person to take some action or refrain from taking some action*." 18 U.S.C. § 1589(c)(1) (emphasis added).   As Marriott explained and Plaintiff failed to rebut, courts have uniformly held that this requires more than a "mere violation of a [visa] regulation." *Alvarado v. Universidad Carlos Albizu*, 2010 WL 3385345, at *3 (S.D. Fla. Aug. 25, 2010); *Garnica v. Edwards*, 72 F. Supp. 3d 411, 415 (S.D.N.Y. 2014) ("violating a labor regulation is not considered an abuse of the law or process under the [forced labor] statute"); *see also Muchira v. Al-Rawaf*, 850 F.3d 605, 622 (4th Cir. 2017) (holding that "abuse of the law" "requires more than evidence that a defendant violated other laws of this country…[i]t requires proof that the defendant 'knowingly' abused the law or legal process as a means to *coerce* the victim to provide labor or services against her will.") (emphasis in original).

The *Alvarado* court's reasoning is instructive.  There, like here, the plaintiff, working under a visa, alleged that a regulatory violation constituted forced labor as an "abuse of the law."  The court flatly rejected the argument, holding that, even assuming a violation of the regulation, "[t]he definition of 'abuse or threatened abuse of the law or legal process' in § 1589 is inconsistent with [the plaintiff's] argument because the definition envisions *misuse* or threatened *misuse* of the law or legal process, not mere violation of a regulation." 2010 WL 3385345, at *3 (emphasis in original).   The court rejected the plaintiff's "attempt[] to convert the violation of a regulation into 'abuse'" because abuse requires use of the law "to exert pressure on another person." *Id.*  Ultimately, the court

held that "[r]egardless of whether the [Defendant] violated [a regulation], the [Defendant] did not wield the regulation as a tool of coercion." *Id.* (citing cases).

The same is true here. Plaintiff's theory does not depend on, much less put forward common evidence regarding, any use of the purported violation of the J-1 regulations to force any J-1 to work at the Hotel when they otherwise would have quit. Indeed, Plaintiff's theory admits that many, if not most, J-1s may be completely unaware of the purported violation as they received the work-based training described in their plans, participated in cultural activities, and had a positive experience at the Hotel. In any event, whether an alleged violation was wielded by Marriott to cause any J-1 to perform labor is an individualized issue that requires evaluating the nature of labor actually provided, whether the labor provided was against the will of the J-1, and taking into account for each individual's circumstances, how the alleged violation misused or threatened to misuse the law to cause the J-1 to provide such labor.

Ultimately, it is important to consider the gravity of the charge Plaintiff seeks to levy with his theory in this case. As the Fourth Circuit explained, "the forced labor provisions of the TVPA *are not* intended to redress every bad employment relationship involving immigrants." *Muchira*, 850 F.3d at 625 (emphasis added). Rather, "[t]hey are intended to effectuate the constitutional prohibitions against slavery and involuntary servitude, by **_criminalizing_** the act of coercing persons into providing labor and services against their will and by providing a civil remedy to the victims of such actions." *Id.* (emphasis added).

The fact that violations of forced labor statutes constitute crimes further weighs on the analysis of whether a violation of a visa regulation, by itself, can support an abuse of the law theory. For example, the court in *Alvarado* noted that accepting the plaintiff's

theory would require the court "to criminalize the mere violation of a regulation…when the regulation itself provides an exclusive list of government remedies…and contains no private right of action." *Id.*

So too here. The J-1 regulations provide the Department of State with discretion to impose "sanctions" against J-1 visa sponsors, not Host Organizations, starting with written reprimands and probation of J-1 programs for violations. Moreover, it is well-settled that an alleged violation of the J-1 regulations does not provide a private right of action. *See e.g.*, *Kang v. POSCO AAPC, LLC*, 2025 WL 1078764, at *3 (S.D. Ind. Apr. 9, 2025) (dismissing claim; plaintiff had "not identified a statute, regulation, or other authority creating a private cause of action to sue for [alleged] violations [of 22 C.F.R. § 62], and *the Court has found none*") (emphasis added). At bottom, Plaintiff's attempt to **criminalize** an alleged regulatory violation should be rejected.

### 2. There is No Common Evidence that Marriott Abused the Law.

Even assuming that a technical violation of the J-1 regulations could somehow constitute an abuse of law (which it cannot), Plaintiff has not put forward any common evidence by which he could establish such a violation for all J-1s. Rather, Plaintiff's Reply incorrectly asserts that all that is required to evaluate whether the J-1 regulation has been violated is whether Marriott intended J-1s to perform work that would assist its operations and whether that work could be performed by hourly workers. Reply at 3–5. But, again, that is not the law. As the J-1 regulations make clear, a J-1 program must provide "work-based training" to the participant. 22 C.F.R. § 62.22(b)(1)(i). In fact, "work is an essential component of on-the-job training." 72 F.R. 33669–01. There is nothing in the regulations that prohibits J-1s from, as part of their training, performing work that could also be performed by other employees. The focus is on the fact that the work also is accompanied

by training.  *See id.* ("While a trainee is performing work as part of his/her training experience, the work is only a part of the learning program…").

As such, contrary to Plaintiff's argument, whether a J-1's experience is consistent with the regulations, and whether Marriott has complied with the regulations, turns on the work the J-1 actually performs and the training they receive—both of which are plainly individualized issues.  The very rulemaking documents on which Plaintiff relies,[6] reject his theory, noting that "there are no *conceptual* or legal distinctions between an employee and a trainee."  *Id.* (emphasis added).  This Court must ask individual questions about each person to determine, among other things, whether the J-1 received the training promised and whether the J-1 performed tasks outside the Plan.

Even still, under Plaintiff's (incorrect) theory, the Court would need to consider each hiring decision made by the Hotel over a nine-year period and whether the J-1 was hired with the *intent* to perform labor that could otherwise be performed by an hourly employee.  This requires looking at, for each J-1, the staffing level of the relevant department and positions at issue when the J-1 was hired, the availability of local workers, and the motivations of the department head at the time the hiring decision was made. And the same is true of Plaintiff's new "attempt" theory which requires examining whether Marriott took specific, intentional steps toward coercing each participant.

### 3.    Individualized Issues Predominate the Causation Element.

Even if this Court were to accept Plaintiff's theory (it should not), Plaintiff must still prove that the alleged violation of the J-1 regulation caused his injury, a mandatory

---

[6] The portion of the document the Plaintiff relies on relates to administrative oversight concerns and "provisions that will permit the Department to more closely monitor training programs."  72 F.R. 33669–01.  Plaintiff cannot bootstrap those administrative concerns into criminal forced labor or RICO violations.

element of his forced labor claim.  *See David v. Signal Intern., LLC*, 2012 WL 10759668, at *25 (E.D. La. Jan. 4, 2012).  And that still requires individualized analysis considering, among other things, whether the J-1 was even aware of the technical violation (doubtful for many) and the subjective belief of whether such violation was material to them and caused them to continue working when they otherwise would have quit (even more doubtful).

Plaintiff's reliance on *Menocal v. GEO Group, Inc.*, 882 F.3d 905 (10th Cir. 2018) does not support his causation argument under his new theory any better than his prior theory.  In that case, the court found that causation could be established via class-wide inference because each detainee "received notice of the Sanitation Policy's terms, including the possible sanctions for refusing to clean" that included severe penalties and each "detainee performed housing unit cleaning work for GEO when assigned to do so." *Id.* at 919–20.  The court held that an inference was appropriate under those unique facts because it was undisputed that each putative class member received the common policy—the allegedly coercive act—and then was coerced by the policy to perform free labor they otherwise not have provided but for the penalties.  *See id.*

Here, by his own admission, Plaintiff's theory relies entirely on a purported *internal* Marriott policy concerning its hiring decisions and the "purpose" for which it employed J-1s at the Hotel, not something Marriott shared with J-1s to force them to perform work they otherwise would not have completed.  Indeed, Plaintiff expressly disavows any reliance on the terms of his Plan or the certifications in his Plan regarding Marriott's compliance with the J-1 regulations. *See* Reply at 17.  Moreover, even if he had not disavowed this theory, whether any statement in a Plan certifying that the J-1 would not

displace non-J-1 employees was true or false is highly individualized, and, even if false, whether it was material to a J-1 such that it caused them to work when they otherwise would not is individualized (starting, of course, with whether they even read the certification before working; Plaintiff did not). Ultimately, unlike in *Menocal*, there is no common policy (or conduct) that each J-1 relied on, much less one that could have uniformly forced them to provide labor against their will.[7]

## C.    The RICO Claim Is Also Individualized.

Plaintiff's new theory also does not provide a basis for certifying his RICO claim because individualized issues predominate.[8]

### 1.    Plaintiff Offers No Common Evidence of an Enterprise.

Plaintiff first argues that, under his new theory, whether Marriott was engaged in an enterprise depends solely on evidence concerning Marriott and its relationships and thus somehow excuses his burden of establishing that common issues predominate. *See* Reply at 12–13. That argument is incorrect. A RICO claim requires "evidence of an ongoing organization" with "various associates [that] function as a continuing unit." *Carlson v. Town of Mountain Vill.*, 2019 WL 1331977, at *5 (D. Colo. Mar. 25, 2019); *see also Boyle v. U.S.*, 556 U.S. 938, 946 (2009) (holding that an association-in-fact enterprise is a "group of persons associated together for a common purpose of engaging in a course of conduct"). Marriott's alleged policies alone are insufficient; rather, Plaintiff must establish an association-in-fact between Marriott and other persons or entities.

---

[7] *CGC Holding Co., LLC v. Broad & Cassel* is distinguishable on the same grounds. That case involved a scheme to defraud borrowers with each putative class member receiving the same loan commitment agreements with the same false promises. 773 F.3d 1076, at 1082, 1092 (10th Cir. 2014).

[8] Plaintiff fails to address, and thus admits, that his class definition purports to include J-1s with time-barred RICO claims. ECF No. 79 at 21 n.11. This alone bars certification.

Here, Plaintiff alleges that the "enterprise" includes Marriott, and unidentified "recruiters" and "sponsors." Reply at 12. However, Plaintiff has not put forward any common evidence to establish that each of these many entities functioned as a unit with Marriott with the purpose of employing J-1s in internships that did not meet the J-1 requirements over a 9-year period. As illustrated in Marriott's Opposition, J-1s come to the Hotel through different means. Some J-1s worked with either an independent recruiting agency or one of five different agencies engaged by the Hotel. *See* Opp. at 5. Others applied directly, using "self-arranged applications."[9] *See id.* And, during the class period, the Hotel has worked with eight different sponsors. *Id.*

The case of *Dockery v. Heretick* is instructive. 2021 WL 3929707, at *22 (E.D. Pa. Sept. 1, 2021), *aff'd* 2022 WL 14810015 (3d Cir. 2022). In that case, the plaintiff alleged a RICO enterprise between annuity settlement companies and lawyers that represented each putative class member in making settlement agreements. The court denied class certification, holding that, among other things, the plaintiff could not satisfy the predominance requirement with respect to the enterprise element because proving that each lawyer shared a purpose with the defendants "require[d] individualized inquiries" regarding each lawyer's relationship with the defendants and with respect to each underlying client. *Id.* So too here. Individualized inquiry is required for each unidentified participant in the enterprise, to determine whether they acted with a common purpose to recruit and hire J-1s into internships that would not comply with the J-1 regulations.

---

[9] Plaintiff offers no explanation as to how J-1s that came to the Hotel via a self-arranged application, that were later matched up with a visa sponsor could possibly be part of the class that was allegedly misled by the "enterprise." Individualized inquiry would be required to identify those persons.

**2.      Causation is an Individualized Issue.**

Plaintiff asserts four predicate acts that he alleges caused RICO injuries to the class: (1) forced labor, (2) visa fraud, (3) mail and wire fraud, and (4) fraud in foreign labor contracting.  Each requires individualized analysis.  First, with respect to the forced labor predicate, individualized issues predominate for the reasons Marriott has argued.  *David*, 2012 WL 10759668, at *25 (holding that "proof of these predicate acts, which are all premised on coercion, cannot be made without resort to individualized proof").

As for the fraud-based predicates, Plaintiff now disavows any allegation that J-1s relied on statements or certifications in their Plans (a clear individualized issue) and instead advances a theory that the State Department relied on certifications in the Plans.[10] In doing so, now for the first time, Plaintiff attempts to contort his theory within the confines of the Supreme Court's decision in *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008).  His attempt fails.  In *Bridge* the Court made clear that a RICO claim requires "direct relation" (proximate causation) between the injury and the predicate act, not merely "but for" causation as Plaintiff argues. *Id.* at 654.

As such, the argument Plaintiff now offers is the exact argument that was rejected by the court in *David*.  As explained in *David*, "[w]hen a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged RICO violation led directly to the plaintiff's injuries."  2012 WL 10759668, at *26. There, the court rejected the fraud on the government/no first party reliance theory because, just as here, the plaintiffs' injuries were based on actions they took in connection with promises about

---

[10] While Plaintiff apparently wants to avoid calling them "Plans" in this section of his Reply, the DS-7002 form is the Training/Internship Placement Plan. S*ee* https://eforms.state.gov/Forms/ds7002.PDF.

their experiences. *Id.* at *28.  Here, just as in *David*, Plaintiff asserts that "without the [allegedly] fraudulent promise…[J-1s] would not have paid the significant recruitment fees…and would not have come to the United States to work for [defendant]." *Id.*  Those injuries could "not [have been] the consequence of the alleged fraud [defendants] directed at the U.S. government" but rather fraud directed at the participant.  *Id.*  As the court in *David* explained "it does not follow that causation between a RICO violation and the injury alleged is satisfied simply because the plaintiff can identify one aspect of fraudulent conduct that occurred in furtherance of the scheme to defraud and show that someone relied on it.  RICO injuries ***must arise out of the unlawful conduct that constitutes the predicate acts***." *Id.* at *29 (emphasis added).  Here, for there to be a direct causal link between the RICO injury and the predicate act, the putative class members must have relied on the representations regarding the compliance of their J-1 programs.[11]

### 3.    Injury is an Individualized Issue.

Injury is also a mandatory element of the Plaintiff's RICO claim.  *See* 18 U.S.C. § 1964(c) (requiring that to recover a person be "injured in his business or property" by a

---

[11] Plaintiff cites to *Bridge* and *Torres v. S.G.E. Management, LLC*, 838 F.3d 629, 638–640 (5th Cir. 2016) for the first time on reply.  Both are distinguishable.  In *Bridge*, the plaintiffs were participants in a local tax sale.  They alleged that the defendants' mail fraud on the county government gave them an unfair advantage in the auction.  The Court held that the plaintiffs need not establish that they relied on the allegedly fraudulent statements.  Instead, the plaintiffs were allegedly injured because the county relied on the statements and awarded defendants with advantages to the detriment of the plaintiffs— that was their injury.  *Torres* involved a pyramid scheme which is "inherently fraudulent" and "*per se* mail fraud" "even if no misrepresentations occur."  To be sure, the harm in that case "involved in pyramid schemes" and occurred not necessarily "because of any misrepresentations, but because [of] the ultimate collapse of the scheme." *Id.* at 640.
　　Here, the contrary is true.  As Plaintiff admits, under his theory, the alleged harm occurs where J-1s rely on "representations that J-1 internship positions will be compliant with the requirements of the J-1 program." Reply at 17.  Proof of individualized reliance is thus required.  And Plaintiff's own admissions as part of his new theory establish that he cannot prove causation for the fraud-based predicate acts with common evidence.

predicate act).  Despite not directly addressing the injury element in his Motion, Plaintiff now attempts in his Reply to manufacture a common injury by focusing on the fact that all J-1s paid costs to their respective recruiters and sponsors, if any, for "participating in the J-1 program."  Reply at 15.  But just because J-1s paid those costs does not mean that Plaintiff can prove RICO injury through common evidence.  On the contrary, individualized inquiries will predominate because, among other things, some J-1s, such as Plaintiff, paid the fees in order to obtain internships with other Host Organizations, and only later transferred to the Hotel.  Plaintiff incurred his fees with his Sponsor irrespective of anything related to Marriott.

Moreover, other J-1s have sworn that they were not injured in any way.  *See* Opp. at 23.  Astoundingly, Plaintiff's Reply now argues that "injury exists regardless of whether class members purport to have" received the J-1 internship described in their Plan, "because the injury stems from the [alleged] noncompliance of the positions." Reply at 15.  In other words, Plaintiff asserts that even J-1s that received their desired J-1 experience, and would not ever assert a claim for injury, were nevertheless commonly injured by the alleged violation of a visa regulation.

Plaintiff's new theory not only exposes the lawyer-driven nature of his claims but also cannot overcome the lack of predominance that precludes certification.  Indeed, even if Plaintiff could assert a RICO claim based on the alleged technical noncompliance of J-1 positions at the Hotel, individualized fact-finding would be required to determine whether any J-1 was injured as a result of the violation.  As the sworn testimony of J-1s establishes, many participants would have still undertaken the costs of participating in the program (the alleged injury) even if they knew of the technical violation because they

received exactly what they hoped for out of their J-1 program at the Hotel.  There is thus no common evidence of injury.

## CONCLUSION

Plaintiff's new theory is not legally cognizable and does not save his Motion. Rather, the new theory shines an even brighter light on the issues that defeat class certification. For the foregoing reasons, and those stated in Marriott's Opposition, Plaintiff's Motion should be denied.


Date: August 15, 2025                    */s/ Michael P. O'Day*
                                         Michael P. O'Day
                                         Ellen E. Dew
                                         William W. Reichart III

                                         DLA PIPER LLP (US)
                                         650 S. Exeter St.
                                         Suite 1100
                                         Baltimore, MD 21202
                                         Tel.: (410) 580-3000
                                         Fax: (410) 580-3001
                                         michael.oday@us.dlapiper.com
                                         ellen.dew@us.dlapiper.com
                                         wes.reichart@us.dlapiper.com

                                         *Counsel for Defendant Marriott International, Inc.*


## REQUEST FOR ORAL ARGUMENT

Defendant Marriott International, Inc. respectfully requests oral argument in connection with Plaintiff's Motion for Class Certification. On a Motion for Class Certification, the Court must rigorously analyze the law and evidence.  Defendant believes that oral argument will be helpful to the Court's required rigorous analysis.

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that on the 15th day of August, 2025, I filed the foregoing document and all attachments and appendices thereto and cause the same to be served on all counsel of record via the Court's CM/ECF system.

<u>*/s/ Michael P. O'Day*</u>
Michael P. O'Day